Phyllis SCHWEIGERT, Plaintiff,

and

Jocelyn Martin, Plaintiff and Appellant,

v.

PROVIDENT LIFE INSURANCE COM-
PANY, A DIVISION OF UNITED SER-
VICES LIFE INSURANCE COMPANY
(USLICO), Defendant and Appellee.

Civ. No. 920350.

Supreme Court of North Dakota.

July 1, 1993.

Deborah J. Carpenter of Carpenter Offices, Bismarck, for plaintiff and appellant.

Patrick J. Ward of Zuger, Kirmis & Smith, Bismarck, for defendant and appellee.

LEVINE, Justice.

Jocelyn Martin appeals from a district court judgment dismissing her sex discrimination claim against Provident Life Insurance Company. We affirm.

Provident Life was acquired by United Services Life Insurance Company (USLICO) in 1982. As part of reorganizing its satellite companies, USLICO undertook to reduce expenses by streamlining operations at Provident Life, which ultimately resulted in the elimination of a significant number of positions, including Martin's. Martin filed a sex discrimination claim against Provident Life with the North Dakota Department of Labor. *See* NDCC § 14–02.4–03. The Department rejected her claim, finding "no evidence to support [Martin's] allegation[ ] she was discharged because of her sex." Martin then commenced a discrimination action against Provident Life in state court, alleging that she had been terminated because of her sex in violation of Chapter 14–02.4, NDCC. After a bench trial, the district court found in favor of Provident Life. Martin appealed.

On appeal, Martin contends that the district court's finding of no sex discrimination is clearly erroneous. We disagree.

■ "It is the policy of this state to prohibit discrimination on the basis of race, color, religion, sex, national origin, age, the presence of any mental or physical disability, status with regard to marriage or public assistance, or participation in lawful activity off the employer's premises during non-working hours." NDCC § 14–02.4–01.[1] Section 14–02.4–03 of our Human Rights Act says, in part, that "[i]t is a discriminatory practice for an employer to ... discharge an employee ... because of ... sex...." In *Moses v. Burleigh County*, 438 N.W.2d 186 (N.D.1989), we grappled with the issue of the effect federal law should have on our analysis of the North Dakota Human Rights Act. Obviously, federal law is not binding on our interpretation or application of state law, and the weight to be given it is a fair subject for debate, in part, because "[o]ur act is broader in scope and more generous in the protection it affords than federal civil rights statutes...." *Id.* at 197 (Levine, J., concurring and dissenting). However, given the obvious parallels between our state law and federal law, we will rely on federal law when it is helpful and sensible to do so, rather than "indiscriminately." *Id.* at 196 (VandeWalle, J., concurring in part and dissenting in part).

In *Moses, supra,* we applied the analytical framework utilized by the federal courts in cases alleging discriminatory treatment:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [employment decision].' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 [101 S.Ct. 1089, 1093, 67 L.Ed.2d 207] (1981) [quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)].

■ The formula does two important things. First, it allocates the order of presentation of proof. Second, it ascribes the burden of proof each party bears. The plaintiff has the initial burden of persuading the fact finder that she has met the elements of her prima facie case.[2] *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. "Establishment of the prima facie case in effect creates a presumption that the em-

---

1. Effective August 1, 1993, the North Dakota Human Rights Act will no longer prohibit discrimination on the basis of a person's participation in lawful activity off the employer's premises during nonworking hours, if those lawful, off-premises activities "direct[ly] conflict with the essential business-related interests of the employer." S.B. 2367, 53rd Leg., 1993 N.D.Laws, Ch. 140, § 1 (amending NDCC §§ 14–02.4–01; –03; –06 and –08); N.D. Const. Art. IV, § 13.

2. The initial burden of establishing a prima facie case "is not onerous." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Indeed, a prima facie case "is easily made out [and] is rarely the focus of the ultimate disagreement." *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 523 (3rd Cir.1992); *see also West v. Swift, Hunt & Wesson*, 847 F.2d 490, 491 (8th Cir.1988) [burden of establishing prima facie case of discrimination is "relatively light"]. Al-

though the evidence a plaintiff can present in his or her attempt to prove a prima facie case varies from case to case, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668, generally, in a case involving an allegedly discriminatory discharge, a prima facie case is established upon a showing by the plaintiff that " '(1) she was a member of a protected class; (2) she was satisfactorily performing the duties of her position; (3) she was discharged; and ... (4) others not in the protected class were treated more favorably.' " *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1113 (7th Cir.1992) [quoting *Jones v. Jones Bros. Constr. Corp.*, 879 F.2d 295, 299 (7th Cir.1989)]. *See also Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1243 (7th Cir.1992) [in discharge setting, plaintiff establishes prima facie case by showing that: she is a member of a protected class; she did her job well enough to meet "employer's legitimate expectations"; she was discharged; and "the employer sought a replacement for" her].

ployer unlawfully discriminated against the employee." *Id.* at 254, 101 S.Ct. at 1094.

If the prima facie case is established, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a facially nondiscriminatory reason for its employment decision; the defendant need not, at this stage, litigate the merits of its reasoning for its decision, nor persuade the fact finder that it was actually motivated by its proffered reasoning. *Id.* at 254, 101 S.Ct. at 1094. *See also* FedREvid 301 (presumption does not shift burden of persuasion). However, the legitimate nondiscriminatory reason given by the employer must be specific and clear enough to "raise[ ] a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.*

If the defendant carries its burden of production, the burden of persuasion shifts back to the plaintiff to show that the reason given by the employer was a pretext for intentional discrimination. *Id.* at 256, 101 S.Ct. at 1095. At this final stage, the plaintiff's burden is said to "merge[ ] with [her] ultimate burden of persuading the [fact finder] that she has been the victim of intentional discrimination." *Id.* The plaintiff may meet this burden of persuasion "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

The federal courts of appeals had split over whether, under *McDonnell Douglas* and its progeny, a plaintiff was entitled to judgment as a matter of law when the trier of fact rejected the employer's asserted reasons for its employment decision. The Supreme Court recently settled the controversy in *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), holding that a plaintiff is not entitled to judgment as a matter of law if he or she proves the employer's proffered reasons for its decision were not its true reasons, because the "fact finder must [also] believe the plaintiff's explanation of intentional discrimination" and make a finding to that effect. *Id.* at ——, 113

S.Ct. at 2754. The court, therefore, modified stage three of the *McDonnell Douglas/Burdine* formula, clarifying what a plaintiff must do to prove pretext: "If ... the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Id.* at ——, 113 S.Ct. at 2749. Then, "[t]he defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question" of whether the employer's action was motivated by intentional discrimination. *Id.* To prevail, the plaintiff must persuade the trier of fact both that the employer's asserted reasoning "was false, and that discrimination was the real reason" for its action. *Id.* at ——, 113 S.Ct. at 2752.

The *Hicks* decision does not disturb the reality that success in establishing the incredibility of the employer's asserted reasons will, in most instances, insure success for the plaintiff, because the incredibility of the employer's reasons "will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* at ——, 113 S.Ct. at 2749. All *Hicks* does is hold that discrimination is a matter of fact, not law, because under Rule 301 FREvid, the presumption of discrimination merely shifts the burden of production, not persuasion to the employer. "[T]he Court of Appeals' holding that rejection of the defendant's proffered reasons compels judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of [persuasion], and ignores our repeated admonition that the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.' " *Id.* (citations omitted).

■ Rule 301 of the North Dakota Rules of Evidence, however, is dramatically different. It makes clear that "[a] party against whom a presumption is directed has the burden of *proving* that the nonexistence of the presumed fact is more probable than its existence." NDREvid 301 (Em-

phasis added.) Our rule "gives presumptions a stronger effect than they are given under the comparable Federal Rule of Evidence, which imposes only a burden of producing evidence to rebut a presumption." *Id.* at Explanatory Note. Accordingly, under North Dakota law, if a plaintiff persuades the trier of fact of facts giving rise to a presumption, the burden of persuasion shifts to the defendant to rebut that presumption.

Notwithstanding the contrast between our rule and the federal rule on the impact of a presumption, the *McDonnell Douglas/Burdine* formula, as modified in *Hicks*, provides a useful model, which we reshape to accommodate our rule and which we rely upon to provide a helpful guide to allocate the order of presentation of proof and the burdens each party bears in a case of discrimination under Chapter 14–02.4, NDCC. Our formula should assist litigants in marshalling and presenting relevant evidence and give courts a framework for analysis in discrimination cases. That formula, however, is not meant to be rigid and formalistic.

■ Accordingly, under our modification of the *McDonnell Douglas/Burdine* framework, in a case under Chapter 14–02.4, NDCC, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the plaintiff. If the plaintiff meets his or her burden of persuasion, and succeeds in establishing the presumption, then, under Rule 301, NDREvid, the burden of persuasion shifts to the employer to rebut the presumption of discrimination by proving by a preponderance of the evidence that its action was motivated by one or more legitimate, nondiscriminatory reasons. If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons, the plaintiff prevails. If, however, the employer persuades the fact finder that its reasons were nondiscriminatory, the employer prevails.

■ Although it is apparent that the trial court analyzed the case under the *McDonnell Douglas/Burdine* formula, which we have concluded is, in part, inconsistent with State law, we believe that no error resulted because the trial court clearly found that Provident Life established by a preponderance of the evidence that its decision to terminate Martin's employment was based upon legitimate, economic reasons not laced with discriminatory motives.

■ The question of whether an employer did or did not intentionally discriminate is a "pure question of fact." *Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Accordingly, our review of the trial court's finding regarding discrimination is governed by the clearly erroneous standard set forth in Rule 52(a), NDRCivP. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *E.g., Blotske v. Leidholm*, 487 N.W.2d 607 (N.D.1992).

Provident Life does not dispute that Martin met her burden of persuading the fact finder of the existence of a prima facie case of discrimination. Martin disputes, in effect, whether Provident Life met its burden of persuading the trier of fact that it had legitimate, nondiscriminatory reason for discharging her. Therefore, we need not review the findings as they relate to the prima facie case of discrimination. Consequently, we focus upon whether the trial court clearly erred in finding, in effect, that Provident Life proved by a preponderance of the evidence that its decision to discharge Martin was motivated by a legitimate, nondiscriminatory reason.

Martin contends that the trial court committed clear error when it found that she had "not been able to produce the proverbial 'smoking gun' to establish [her] case, either in the form of oral admissions or

documentary evidence." Martin argues that she presented abundant circumstantial evidence of disparate treatment and that the "smoking gun" reference indicates that the trial court erroneously ignored that evidence in its analysis of whether Provident Life's reason for discharging her—to reduce expenses by eliminating personnel and streamlining operations—was a pretext.

■ Although direct proof of discrimination is probative and can be persuasive, *see, e.g., United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983); *Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239 (7th Cir.1992); *supra,* n. 3; *infra,* n. 5, it clearly is not required to prove intentional discrimination. *E.g., Aikens, supra; International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *see also Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 523 (3rd Cir.1992) ["Explicit evidence of discrimination, *i.e.,* the 'smoking gun'— is not required."]. It is precisely because direct evidence is usually unavailable that the *McDonnell Douglas/Burdine* formula, and our analogous State law formula, are so useful. Under both, the shifting burdens of proof are designed to assure that the " 'plaintiff [has] his day in court despite the unavailability of direct evidence.' " [3] *TWA v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) [quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979)]. Accordingly, the trial court's observation that there was no direct proof of discrimination was a logical component of its analysis.

Having found no "smoking gun," that is, no direct evidence of discrimination, the trial court weighed the evidence and concluded that Provident Life proved that its reasons for firing Martin were, in fact, nondiscriminatory. It is clear from the record that the trial court considered Martin's

circumstantial evidence of pretext in reaching its decision. Therefore, we reject Martin's contention that the trial court ignored the evidence she presented.

■ Martin next contends, that the trial court erred in not finding pretext. She claims, in essence, that the trial court's factual findings are without evidentiary support and are, therefore, clearly erroneous. We disagree.

Martin asserts that the manner in which she was terminated supports her position. Martin and several other women were called into a room on August 21, 1989, and were told that their employment would end on August 31, 1989. In contrast, others who were terminated were notified individually and received more than ten days notice. Moreover, high-level, elected officers were given the option of retiring early in lieu of discharge.

■ We agree that the manner in which one is terminated may be relevant and is entitled to whatever weight the fact finder deems appropriate. Here, the trial court assigned minimal weight to the manner in which Martin was terminated, finding that there was a nondiscriminatory reason behind the different treatment described by Martin.

"The group meeting would have been handled exactly the same way, in my judgment, had there been a man among this group, and the termination process would have worked exactly the same way insofar as the manner of execution is concerned had there been a man amongst the group. Differences in treatment occurred not because the plaintiff[ ] [was a] female[ ] but because other department heads who were involved in the same reorganization process made a greater effort to avoid offending sensibilities."

Therefore, the court attributed the manner in which Martin was terminated to the

---

**3.** The Connecticut Supreme Court recently observed that "[d]irect evidence has been held to include discriminatory statements by decisionmakers related to the decisionmaking process," as well as an employer "policy discriminatory on its face." *Miko v. Comm'n on Human Rights and Opportunities,* 220 Conn. 192, 596 A.2d 396, 404 n. 13 (1991) (citations omitted). Of course, these examples are not exhaustive.

insensitivity of the officer who fired her, and not to his "discriminatory animus." The court made several similarly telling comments regarding that officer's brusque personality and we are not definitely and firmly convinced that the court's understanding of the motivation underlying the manner of Martin's termination was mistaken. We conclude that those findings are not clearly erroneous.

Martin also asserts that the rate of her severance pay, compared with that of discharged male employees, further discredits the trial court's findings. Martin and the other discharged women were given one week's severance pay for each year of service; the discharged men were paid at the rate of one and one-half week's for each year of service. The trial court found, however, that the different treatment was not sex-based, but was grounded upon a written, gender-neutral policy which awarded extra severance pay to elected officers. Martin was not an elected officer; the men who left Provident Life were. The record supports the finding of no sex-based disparity in severance pay and we conclude, therefore, that that finding is not clearly erroneous.

Martin also claims that, even though her position was eliminated, her "job and duties" survived and, subsequently, were performed by a male employee with less seniority than she. Martin was a first-level supervisor in the Supply & Mailing Department. As part of Provident Life's restructuring, her supervisory duties were absorbed by her supervisor. Some of her nonsupervisory duties were redistributed among lower-level employees who had been under Martin's supervision and a majority of them were allocated to Wayne Hochhalter, the male employee Martin refers to. Hochhalter, however, also performed func-

tions involving "heavy labor, moving and maintenance work" in conjunction with his position as Office Service Coordinator [4] and had printing expertise valued by Provident Life. The officer who discharged Martin testified that Hochhalter's ability to perform those additional duties and to work with local printers weighed against retaining Martin as coordinator of the newly created Office Services Department.

The trial court carefully scrutinized the charge that the new job duties were a guise for intentional discrimination:

"Some of the duties associated with Mr. Hochhalter's position could certainly have been discharged by Ms. Martin, such as being a courier and assisting with photographic duties. On the other hand, it is clear that the functions of the new position were duties that someone had to do and that Ms. Martin would not have been qualified to carry out some of them. . . .

"Given the weakness of the explicit reasons offered to justify the company's decision, the suspicion necessarily arises that there may have been some other reason for the action the company took. But there is no evidence of any kind in the record to suggest an actual bias on the part of [the officer who fired Martin] or anyone else against women in general or Ms. Martin in particular.[5] On the contrary, the evidence establishes that the ax fell with considerable force on a number of men, many of whom were upper echelon employees and officers with many years of service.

"When all is said and done, it is quite obvious that the reason Mr. Hochhalter was retained and Ms. Martin was not was that he was capable of carrying out all of the amalgamated duties while it

---

**4.** The newly created Office Service Department replaced the Supply and Mailing Department and the Policy Records Department, assuming all of the duties previously performed by those departments and several additional labor-intensive duties.

**5.** Direct evidence of bias is a ground for finding pretext. *See generally* Larson, Employment Discrimination § 50.73(c) (1992 and Supp.1993)

(collecting cases). A finding of actual bias is shorthand for a finding that a discriminatory reason more likely motivated the employment decision. *E.g., Ezold v. Wolf, Block Schorr and Solis–Cohen,* 983 F.2d 509 (3rd Cir.1992). *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723 (8th Cir.1992) [explaining how direct evidence is used under both pretext and mixed-motives theories].

would not have been possible for Ms. Martin to carry out some of the duties Mr. Hochhalter had been assigned. No contention is made that she was capable of performing them all nor is any complaint made about failing to offer her the opportunity to prove that she was capable of performing such duties.

"Had the 'Hochhalter' duties been created and attached to the new position, the conclusion that a man was being favored over a woman would be quite obvious, but where, as here, those duties were real and had been performed by the man who was given the new position, it cannot be concluded that it was a pretextural (*sic*) device to get rid of Ms. Martin. It made sense to combine the duties and it made sense to retain Mr. Hochhalter to carry them out.

"The fact that there were legitimate reasons for choosing Mr. Hochhalter for the new position as opposed to Ms. Martin is the controlling fact central to disposition of [this] case.... [Martin] was treated badly but not because she was a woman."

 In concentrating on whether the new job duties assigned to her were a sham, *i.e.*, a pretext, to retain men at the expense of women, the trial court, in effect, raised, sua sponte, an issue of disparate impact. Disparate impact describes an employment practice that is facially neutral, or fair in form, but falls more harshly on one group than another and cannot be justified by business necessity. *See, e.g., Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Teamsters v. United States*, 431 U.S. at 336 n. 15, 97 S.Ct. at 1854 n. 15. Proof of intentional discrimination is not required, because the premise of the disparate impact approach is that certain employment practices may be, in operation, functionally equivalent to intentional discrimination, even though adopted without a deliberately discriminatory motive. *Griggs*, 401 U.S. at

430–32, 91 S.Ct. at 853–54. For instance, in *Griggs*, an employment policy that required a high school education for initial assignment to any position but the lowest-rated position was invalidated, because the policy, though "fair in form," was "discriminatory in operation," and because the employer had not shown "business necessity," *i.e.*, that the employment practice was "related to job performance." *Id.* at 431, 91 S.Ct. at 853. Accordingly, "[t]he thrust of the inquiry is whether the employer's practice creates 'artificial, arbitrary and unnecessary barriers to employment.'" *Murphy v. Derwinski*, 990 F.2d 540, 544 (10th Cir. 1993) (quoting *Griggs, supra* at 430–31, 91 S.Ct. at 853). Martin made no argument below or on appeal that Provident Life's streamlining had a disparate impact and the trial court's findings that the new job duties to be performed by Hochhalter were based on legitimate reasons are not clearly erroneous.[6]

The trial court was persuaded that Provident Life's reasons for Martin's termination were legitimate reasons and not a pretext for gender discrimination. We are not definitely and firmly convinced that the trial court made a mistake.

AFFIRMED.

NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

I concur in the result reached by the majority opinion. Insofar as the analysis under and reliance upon federal law are concerned, I retain the same reservation I expressed in *Moses v. Burleigh County*, 438 N.W.2d 186, 194 (N.D.1989) [VandeWalle, J., concurring in part and dissenting in part]. *St. Mary's Honor Center v. Hicks*, — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), is but an example of why we ought to develop our own jurisprudence or be prepared to change our decisions based on the next turn of events in

---

**6.** The reorganization appears to have fallen more harshly on men. Before its reorganization, Provident Life employed 113 employees, 82 of whom were women. By 1992, it employed only 67 persons, 53 of whom were female. Accordingly, the number of men employed by Provident Life was reduced by 55%, whereas the number of women was reduced by 35%.

the construction and application of the Federal Act.

In *Moses,* I was skeptical of the adaptation of the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) scheme to our law. The adaptation by the majority in this case with the difference in the effect of presumption under NDREv 301 and Rule 301 of the Federal Rules of Evidence only heightens that skepticism. The *McDonnell Douglas* scheme is, after all, not "black letter" law. Its presumption is but "a procedural device, designed only to establish an order of proof and production." *Hicks, supra,* —— U.S. at ——, 113 S.Ct. at 2754–56, and has been described as "a ... 'way to evaluate the evidence' in a Title VII disparate-treatment case...." *Hicks, supra,* at ——, 113 S.Ct. at 2756, [Souter, J., dissenting] quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

The majority opinion elevates that scheme—which includes a presumption of unlawful discrimination I believed objectionable in *Moses*—beyond what the Supreme Court has contemplated, by combining the *McDonnell Douglas* presumption with our Rule 301 which shifts the burden of persuasion, not the burden of production as does Federal Rule 301. I suggest the effect is not "a procedural device" "to evaluate evidence" but rather the effect is to create evidence for the purpose of assisting the plaintiff to win a lawsuit. Nothing in Chapter 14–02.4, NDCC suggests such a result and I would not import the *McDonnell Douglas* scheme into our law to achieve it. Triers of fact have historically evaluated evidence, without such a scheme. The results may not always be what certain plaintiffs or defendants desired, but that does not justify a contrived result.

Notwithstanding the scheme envisioned by the majority, I agree with the trial court and the majority that plaintiff did not prove her case.