Alan J. SCHUHMACHER and Dale G. Wavra, Plaintiffs and Appellees

v.

NORTH DAKOTA HOSPITAL ASSOCIATION, No. Dak. Health Service, Advantage Healthcare Net, Inc., and Hospital Services, Inc., Defendants and Appellants

Civ. No. 940155.

Supreme Court of North Dakota.

March 20, 1995.

James A. Jones, Sprenger and Lang, Minneapolis, MN, for plaintiffs and appellees. Appearance by Michael F. Daley, McConn, Fisher, Olson & Daley, Grand Forks.

Paul J. Zech, Felhaber, Larson, Fenlon & Vogt, Minneapolis, MN, for defendants and appellants. Appearance by Douglas R. Herman, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo.

VANDE WALLE, Chief Justice.

The North Dakota Hospital Association [NDHA or the Association] appealed from a judgment upon a jury verdict of the district court, Northeast Central Judicial District, finding that it had engaged in unlawful age discrimination and from denials of its motions for judgment notwithstanding the verdict, new trial, remittitur, and reconsideration of the award of attorneys' fees. Because the jury instructions did not adequately inform the jury of the applicable law and relevant evidence necessary to the defense was erroneously excluded, we reverse and remand for a new trial.

NDHA is a nonprofit association of hospitals and clinics which was organized, in part, for the purpose of making it more economical for its member institutions to purchase supplies and to collect outstanding debts. The Association is mostly funded by the annual dues from its member institutions. During the time relevant to this action, NDHA contained two for-profit subsidiaries. These were a group purchasing agency, known as Advantage, and Hospital Services Incorporated [HSI], a collection agency. Alan J. Schuhmacher was hired on September 8, 1974, to be Director of Purchasing for the corporation which eventually became known as Advantage. He later received the title of Vice President, North Dakota Health Services, Advantage Healthcare Net, Inc. He was discharged from this position on February 21, 1989. At that time he was 54 years old. Dale G. Wavra was hired on April 15, 1981, to do collections for HSI. He was 58 years old when he was discharged from the position of Vice President of HSI on February 21, 1989. Arnold "Chip" Thomas, who

became the Chief Executive Officer of NDHA on January 1, 1989, made the decision to fire both Wavra and Schuhmacher. He testified at trial that the decision was necessitated by his perception that NDHA faced a financial crisis. No other NDHA employees were discharged at this time.

According to evidence at trial, when Schuhmacher was discharged, his duties were distributed among the existing sales staff at Advantage. By October of 1989, one of those staff people, Wade Johnson, was given the title of Vice President, Chief Operating Officer of Advantage. At that time, Johnson was within one month of his thirty-ninth birthday. After Wavra was discharged, HSI was moved from Grand Forks to Bismarck. In May of 1989, Kimberly Rau was hired to be "head collector" or "director" to oversee the opening of the Bismarck operation. In January of 1991, she was given the title of Vice President. At the time of trial, Rau was thirty-two years old.

Wavra and Schuhmacher sued NDHA under the North Dakota Human Rights Act, NDCC ch. 14–02.4, claiming age discrimination. They alleged that Thomas had not sufficiently evaluated his employees before deciding which ones to keep and that, therefore, he must have discharged Wavra and Schuhmacher because of their ages under the assumption that discharging older employees would save more money than would discharging younger employees. A jury found for both Wavra and Schuhmacher and awarded a total of $730,000 in damages. The trial court's award of costs and attorneys' fees brought the total judgment against NDHA to over one million dollars. NDHA's appeal of the judgment challenges the sufficiency of the evidence, the jury instructions, evidentiary rulings, and the amount of damages and attorneys' fees. Because we reverse based on a combination of errors in the jury instructions and evidentiary rulings, we do not address the other issues raised by Appellants.

The Association asserts that Wavra and Schuhmacher were discharged when their positions were eliminated for legitimate business reasons. It argues that the trial court improperly equated salary-status decision

making with age-based decision making. The Association also argues that Wavra and Schuhmacher failed to demonstrate that they were replaced after their discharge and therefore failed to establish all of the elements of an age-discrimination claim. The motion for new trial specifically alleged errors in law and evidence during the trial.

■ Our review of a denial of a motion for a new trial is limited to those issues raised on the motion before the trial court. *Andrews v. O'Hearn*, 387 N.W.2d 716 (N.D.1986). Errors of law occurring at trial and timely excepted to by the applying party may be grounds for a grant of a new trial. *Id.* N.D.R.Civ.P. 59(b)7.

> "Jury instructions must fairly inform the jury of the applicable law.... On appeal, we review jury instructions as a whole.... If taken as a whole they correctly advise the jury of the law, we will not reverse a jury decision on the basis of particular insufficient or erroneous parts of the instructions.... Thus, we review the adequacy of the entire instruction given and we do not dwell on the merits of instructions requested by counsel but not given by the trial court."

*Beilke v. Coryell*, 524 N.W.2d 607, 609 (N.D. 1994) [citations omitted].

■ We also inquire whether within the context of the complete jury instructions, specific instructions would likely confuse or mislead the average jury. *Id.* Jury instructions that erroneously inform the jury of the law which must be applied to the specific facts at issue may constitute reversible error. *Meshefski v. Shirnan Corp.*, 385 N.W.2d 474 (N.D.1986).

Under the North Dakota Human Rights Act, it is illegal discrimination for "an employer to ... discharge an employee ... because of ... age." NDCC § 14–02.4–03 (Supp.1993). Employees who suffer discrimination may bring suit against offending employers and obtain equitable relief or awards for damages. *Id.* §§ 14–02.4–19, 20, 21.

■ In *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225 (N.D.1993), a majority of this court adopted a modified version of fed-

eral procedural law to assist plaintiffs relying on indirect evidence to prove employment discrimination claims under the Human Rights Act. *See also* Nicholas W. Chase, Comment, *Civil Rights—Employment Discrimination: Modifying Federal Standards to Reflect Principles of State Law: The North Dakota Supreme Court's Examination of the Hicks Rationale Prompts the Court to Customize Its Own Standard to Review State-based Employment Discrimination Claims,* 70 N.D.L.Rev. 207 (1994). After *Schweigert,* once a plaintiff proves by a preponderance of the evidence a prima facie case of employment discrimination, the burden shifts to the defendant to prove by a preponderance of the evidence that the challenged "action was motivated by one or more legitimate, nondiscriminatory reasons." *Schweigert,* 503 N.W.2d at 229.

Although the *Schweigert* majority did not specifically delineate the elements of a prima facie case of employment discrimination, it cited to federal cases for illustration. *Id.* at 227 n. 2. Federal courts vary in their descriptions of the requirements for a prima facie case of unlawful discrimination in employment. The elements of the prima facie case are usually: the plaintiff is a member of the protected class (in this case, age); plaintiff suffered an adverse employment decision; plaintiff's work performance was satisfactory; and plaintiff was replaced. *See id; McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Hummel v. Mid Dakota Clinic, P.C.,* 526 N.W.2d 704, 709 (N.D.1995) ["In *Schweigert* . . . we said that to establish a prima facie case of discriminatory discharge under the Act, one of the four factors a plaintiff must show is that the plaintiff was satisfactorily performing the duties of his position."]. The fourth element of the prima facie case, involving whether the discharged employee was replaced, is the source of much controversy among the courts and has been phrased in vastly divergent ways. Some courts express it in terms of whether the plaintiff's responsibilities were assumed by another employee in such a manner as to demonstrate that the employer had a continuing need for the plaintiff's particular skills. *E.g., Keisling v. SER–Jobs for Prog-*

*ress, Inc.,* 19 F.3d 755 (1st Cir.1994). Other courts avoid the replacement terminology and merely require a showing that the plaintiff was treated less favorably than other employees, not in the protected class. *E.g., Rea v. Martin Marietta Corp.,* 29 F.3d 1450 (10th Cir.1994). The Eleventh Circuit Court of Appeals has stated the fourth element differently altogether. *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497 (11th Cir.1991). That court requires the plaintiff to provide "evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Id.* at 1501.

■ Certainly, focusing on whether a plaintiff was replaced would be inappropriate in a case involving a reduction in force in which the plaintiff's position is eliminated. An employer could make all of its firing decisions based purely on age and take no action to replace those fired, yet the employer's actions would clearly be age discrimination under the Human Rights Act. *See* NDCC § 14–02.4–03 (Supp.1993) [including among the list of "discriminatory practices" the discharge of an employee because of age]. Thus, the formula that the *Schweigert* majority adopted as "a helpful guide to allocate the order of presentation of proof and the burdens" of each party and to "give courts a framework for analysis in discrimination cases" was "not meant to be rigid and formalistic." 503 N.W.2d at 229. *Accord Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982) ["A mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists."].

The Association argues that when an age discrimination complaint arises from a business reorganization or reduction in force, the plaintiff must prove an additional element for a prima facie case. It cites authority which states that, in these situations, plaintiffs must not only prove that they were replaced, but must come forward with additional evidence that age was a "determining factor" in the termination. *See, e.g., Ridenour v. Lawson*

*Co.,* 791 F.2d 52 (6th Cir.1986). Schuhmacher and Wavra, in turn, argue that:

> "The fifth element of a prima facie case the Association seeks to impose—that 'age was a motivating factor behind the discharge'—would, in essence, require *Plaintiffs* to prove that the discharge was unlawful discrimination. *Schweigert* requires that a plaintiff in an employment discrimination case prove only a prima facie case and, having done so, the burden shifts to the defendant employer to prove that age played *no* part in its decision."

■ Although the *Schweigert* majority applied the requirements of Rule 301, N.D.R.Ev., to the presumptions created by a plaintiff's establishment of a prima facie case of employment discrimination and thereby placed a greater burden of proof on defendants than do the federal courts, it did not, and could not, eliminate an essential element from the applicable discrimination statute. Section 14–02.4–03, NDCC, still defines a discriminatory employment practice as "adverse or unequal treatment ... *because of* ... age." [emphasis added]. Thus, notwithstanding *Schweigert,* a plaintiff seeking to recover damages for loss of employment due to age discrimination must still prove "that the discharge was unlawful discrimination."

■ However, although the plaintiff bears the ultimate burden of proving the fact of discrimination, the plaintiff does not need to prove that ultimate fact within the prima facie case. Under either the North Dakota Human Rights Act or the federal Age Discrimination in Employment Act [ADEA], a plaintiff may, but does not necessarily, prevail on the basis of the prima facie case combined with a finding of the incredibility of the defendant employer's proffered explanation for its employment decision. *Schweigert,* 503 N.W.2d at 229 ["If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons, the plaintiff prevails."]; *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ["The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,

together with the elements of the prima facie case, suffice to show intentional discrimination."]; *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994) ["Thus, *Hicks* clarified that the only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury *must* draw, to a permissive one the jury *may* draw, *provided* that the jury finds the employer's explanation 'unworthy' of belief."]; *id.* at 1083 n. 3 ["Every circuit court to address the impact of *Hicks* on the submissibility of employment discrimination cases has reached this same conclusion."]; *but see Rhodes v. Guiberson Oil Tools,* 39 F.3d 537, 545 (5th Cir.1994) [expressing concern that a plaintiff could establish a prima facie case, discredit the employer's proffered reasons for its actions, and win a judgment that could not "be set aside for insufficiency of the evidence even though the trial record is absolutely devoid of any evidence or testimony which relates to discriminatory actions or animus"]. Thus, a properly-instructed jury which finds by a preponderance of the evidence a prima facie case of age discrimination while disbelieving the defendant's alternative explanations for its actions could viably conclude that the defendant illegally discriminated on the basis of age.

■ In this case, NDHA contends that the jury was improperly instructed that the replacement element of the prima facie case could be proved by showing that the plaintiff's "duties were either distributed among younger employees or assumed by newly-hired younger employees." In Interrogatory No. 2 on the special verdict forms concerning each plaintiff, the jury was asked, "After his termination from employment, were the duties of Plaintiff ... either distributed among younger employees or assumed among newly-hired younger employees?" According to this instruction, when an employer eliminates a position to cut costs and distributes the discharged employee's job duties among its remaining employees, it "replaces" that employee. We can find no basis in the law for such a definition of replacement. In support of this instruction, the

plaintiffs in their brief cite *Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir.1994). Wallis was held to have satisfied the replacement element of the prima facie case by showing that twelve of his thirteen job functions were assumed by retained, younger employees after he was discharged. *Id.* However, the *Wallis* court required "very little evidence" for establishing a prima facie case. *Id.* at 891. It expressly stated that the elements of a prima facie case of employment discrimination did not have to be proved by "a preponderance of the evidence." *Id.* at 889. The *Schweigert* majority expressly required that plaintiffs relying on indirect evidence under the North Dakota Human Rights Act must prove the elements of a prima facie case "by a preponderance of the evidence" in order to shift the burden of proof. 503 N.W.2d at 229. Thus, the rationale of the *Wallis* court may not be applied to justify a jury instruction under this state's Human Rights Act. This is especially true in view of the *Wallis* court's express statement that "in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas,* plaintiff has failed to raise a triable issue of fact." 26 F.3d at 890.

■■ Another case relied on by the plaintiffs, *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir.1988), specifically required that to satisfy the replacement element of the prima facie case, plaintiff must show "that persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff." Thus, the *Hajoca* court recognized that a plaintiff could "satisfy the standard by showing that his employer treated an older worker differently than younger employees in similar positions." *Id.* at 320. An employer could distribute the duties of a discharged employee among several younger, retained employees without treating older workers differently than younger employees in similar positions. *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991) ["Thus, the absorption of Frieze's work by other employees in Boatmen's loan department does not permit a reasonable inference of discrimination."].

reasonable inference of discrimination."]. Moreover, the Fourth Circuit Court of Appeals requires a similarly low level of proof of a prima facie case as that of the Ninth Circuit Court in *Wallis.* *Id.* Accordingly, we find *Hajoca* of little use in resolving this issue.

The other case cited in the plaintiffs' brief, *Carter v. City of Miami,* 870 F.2d 578 (11th Cir.1989), did not involve a distribution of the discharged-employee's duties to the remaining employees. It involved a situation in which a discharged employee was replaced by a younger individual also within the protected class. *Carter,* too, is of little use in resolving this issue.

Schuhmacher and Wavra also argue that because a majority of this Court in *Schweigert* based its holding on the trial court's finding that the defendant's proffered explanations for its actions were not pretexts for discrimination, the Court must have accepted a finding of a prima facie case. The argument presumes that this Court had to accept the plaintiff's prima facie case in order to get to the pretext issue. However, the *Schweigert* majority did not have to confront the merits of the prima facie case because the defendant, Provident Life Insurance Company, did not dispute the plaintiff's prima facie case. *Schweigert, supra.* Thus, *Schweigert* does not support the notion that the replacement element of the prima facie case may be satisfied by a showing that a plaintiff's job duties were distributed among younger, retained employees.

■■ The cost-cutting employer who is able to eliminate a position and spread out the necessary functions of the eliminated position among the remaining employees is not demonstrating any continuing need for the discharged employee's skills. The opposite is true. The employer is identifying, rightly or wrongly, needless costs in order to run a more efficient business. If the replacement element of the prima facie case can be satisfied by merely showing that the plaintiff's duties were distributed among remaining, younger workers, any time an employer laid off one of its older workers during a reduction in force, it would be setting itself up for

an age-discrimination lawsuit. The North Dakota Human Rights Act does not prohibit discharging employees who are over forty years old. It prohibits discharging employees over age forty *because of their age.* NDCC §§ 14–02.4–02,03. *Accord Serben v. Inter–City Mfg. Co., Inc.,* 36 F.3d 765, 766 (8th Cir.1994) [focusing on "the ultimate factual issue[,] whether Inter–City intentionally discriminated against Serben because of his age" and stating that "Serben's mere membership in the protected class does not permit an inference of age discrimination."]. *See also Ackerman,* 670 F.2d at 70 [noting that, under the ADEA, employers may rely on their subjective judgment to discharge employees for any nondiscriminatory reasons "especially . . . when . . . a management level job is involved."].

■ Additionally, including the replacement issue on the special verdict form quite possibly caused the jurors to place too much emphasis on one element of the prima facie case when their attention should have been focused on the ultimate finding required by law—that the defendants discharged the plaintiffs *because of age.* NDCC § 14–02.4–03. It is true that the jurors were instructed that they needed to find that the defendant's actions were based on age and that replacement by younger employees was not alone sufficient to prove illegal age discrimination. However, the jury instructions were lengthy and included many complex legal definitions. The singling out of one of those definitions, by including it as an interrogatory, could very possibly have caused the jury to give it more weight in the ultimate decision than it should have been given. *See, e.g., Slaubaugh v. Slaubaugh,* 466 N.W.2d 573 (N.D.1991) [deciding that trial court's undue emphasis of certain language served to confuse and mislead the jury]. The instructions leave the jury with the erroneous impression that the replacement finding was of greater importance than any of its other findings.

■ The trial court's Instruction 12 related to the jury that:

"As a general rule, predicating employment decisions upon a general assessment of the relative costs associated with older employees is not permissible. You may find for Plaintiffs if you believe that the fact that Plaintiffs were paid more than their younger replacements was a motivating factor in the decision to fire them."

Instruction No. 17, entitled "Employment Decisions Because of Age" and subtitled "Other reasons may be considered," related to the jury:

"You may conclude, based on the evidence presented to you, that more than one factor motivated Defendants to discharge Plaintiffs. In that event, Plaintiffs are still entitled to recover on their claim if you are persuaded that age played any part in determining whether Plaintiffs were to be discharged. For Plaintiffs to prevail on their claims, you need not find that age was the sole or even the main reason for Defendants' treatment of them, as long as you find that they, or either of them, were discharged as an effect of a 'discriminatory practice' as defined in these instructions because of their ages of 54 as to Plaintiff Schuhmacher and 58 as to Plaintiff Wavra.

*"In this connection you may also consider whether the fact that Plaintiffs were paid more than their younger replacements was a motivating factor in the Defendants' decision to fire them on February 21, 1989."*

[Emphasis added].

It is unclear what law the trial court relied on for this instruction. The statute prohibits certain employment decisions made "because of . . . age." NDCC § 14–02.4–03. It does not prohibit decisions based on salary. *See also Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993) [stating that the ADEA "requires the employer to ignore an employee's age (absent a statutory exemption or defense); it does not specify *further* characteristics that an employer must also ignore."]. A search of the available precedent reveals only that some courts have stated that a finding of a direct correlation between age and salary by the factfinder may support a conclusion that some salary-based decisions could be included in the ADEA's definition of age discrimination. E.g., *Metz v. Transit Mix, Inc.,* 828

F.2d 1202 (7th Cir.1987). The jury instructions in this case did not ask the factfinder to make this correlation. Further, in *Biggins, supra,* —— U.S. at ——, 113 S.Ct. at 1705, a unanimous United States Supreme Court, interpreting language similar to that found in the Human Rights Act, held that there is no age discrimination under the ADEA "when the factor motivating the employer is some feature other than the employee's age." Although recognizing that the years of service of the discharged employee may be some evidence of age discrimination, the Supreme Court reasoned that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.'" *Id.,* —— U.S. at ——, 113 S.Ct. at 1707. *Accord Serben,* 36 F.3d at 766 ["Serben's status as an experienced and thus higher paid employee also does not in itself permit an inference of age discrimination."] Thus, instructing the jury that it could base a finding of age discrimination on a finding that the plaintiffs were paid more than their younger colleagues, i.e. a factor other than age, had no basis in law and was error.

■ The inclusion of the erroneous instructions might not have been as prejudicial if the trial court had also instructed the jury that under North Dakota law, absent statutes or contracts providing otherwise, employers do not need a reason, or reasons, for their personnel decisions. NDCC § 34–03–01; *Bykonen v. United Hosp.,* 479 N.W.2d 140 (N.D.1992). The defendants requested, and the court refused, an instruction which stated:

"The employer has broad discretion to retain or dismiss its employees. The issue before you is not whether you agree with the employer's business judgment, but whether the employer's decision was motivated by an intent to discriminate on the basis of age. Nothing in the age discrimination law provides tenure to competent older workers. They can be let go for any reason or no reason, provided only that the reason is not their age. They can be let go because they are not quite as good as someone else who can do their job, even if that someone else is a younger person."

■ Under the procedure adopted by the *Schweigert* majority, the plaintiff offers evidence to prove a prima facie case of discrimination and then the defendant articulates nondiscriminatory reasons for its actions to put the issue in controversy. *Schweigert, supra.* Thus, much of the presentation of the plaintiff's case is made by questioning the credibility of the defendant's actions. The jury may erroneously base a finding of illegal employment discrimination merely on its views regarding the soundness of the defendant's business judgment, or its perceptions of fairness, unless the defendant is given the benefit of an instruction cautioning the jury that it may not base a decision on such considerations. *Hillesland v. Federal Land Bank Ass'n,* 407 N.W.2d 206 (N.D.1987); *Walker v. AT & T Technologies,* 995 F.2d 846 (8th Cir.1993). To avoid error on remand, the trial court should instruct the jury that employers do not need "just cause" or even "cause" to discharge at-will employees.

■ Because the credibility of the defendants' proffered reasons for their actions becomes so much the focus of the plaintiffs' trial strategy under the *Schweigert* formula, trial courts need to be sensitive to the defendants' ability to defend the credibility of the reasons given for their employment actions. NDHA attempted to present testimony regarding the business justifications for its decision to discharge Schuhmacher and Wavra. This testimony would have been from witnesses with personal knowledge of the operations of Advantage, HSI, and NDHA and of the allocation of duties among the employees at the time of the decision in controversy. Defendants in cases involving the North Dakota Human Rights Act must be allowed the opportunity to prove that their actions were based on nondiscriminatory motives. *Schweigert, supra. See also Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1434 (10th Cir.1993) [going so far as to allow hearsay evidence offered to establish the defendant's state of mind in making its employment decisions and "not offered for the truth of the matter asserted"]. Thus, on remand the trial court should be careful to allow NDHA to

present all the relevant evidence necessary for it to adequately defend the credibility of its proffered reasons for discharging Schuhmacher and Wavra.

▮ Although each of the errors discussed in this opinion, standing alone, may have been harmless, the cumulative effect of the several errors requires reversal. *Fuhrman v. Fuhrman*, 254 N.W.2d 97 (N.D.1977). Thus, we reverse and remand for a new trial.

SANDSTROM, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

MESCHKE, Justice, concurring.

I concur in the remand for a new trial. I agree there was overemphasis on the means of replacement in the special verdict form and the instructions. How the claimants were replaced by younger workers, as differentiated from whether they were so replaced, is an evidentiary feature, not an element of the disparate treatment claim. Further, I agree that the trial court was too restrictive in limiting NDHA's presentation of evidence about its claimed legitimate reasons for terminating Schuhmacher and Wavra.

In my opinion, however, the majority opinion subtly shifts the formulation that this court agreed on in *Schweigert*, which "placed a greater burden of proof on defendants than do the federal courts," by equating the effect of the *Schweigert* presumption to that of the more tentative federal presumption. This shift is apparent in this passage of the majority opinion:

Under either the North Dakota Human Rights Act or the federal Age Discrimination in Employment Act [ADEA], a plaintiff may, but does not necessarily, prevail on the basis of the prima facie case combined with a finding of the incredibility of the defendant employer's proffered explanation for its employment decision. *Schweigert*, 503 N.W.2d at 229 ["If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons,

the plaintiff prevails."]; *St. Mary's Honor Center v. Hicks*, [— U.S. —, —], 113 S.Ct. 2742, 2749 [125 L.Ed.2d 407] (1993) ["The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."]; ....

Also, I believe the majority really employs the federal formulation, rather than the *Schweigert* one, when it later concludes:

Thus, a properly-instructed jury which finds by a preponderance of the evidence a prima facie case of age discrimination while disbelieving the defendant's alternative explanations for its actions could viably conclude that the defendant illegally discriminated on the basis of age.

Under *Schweigert*, rather, the effect of NDREv 301 is that "a properly-instructed jury which finds by a preponderance of the evidence a prima facie case of age discrimination while disbelieving the defendant's alternative explanations for its actions [*must*] conclude that the defendant illegally discriminated on the basis of age."

This difference in effect is best illustrated by what a majority of this court subscribed to in *Schweigert*:

If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons, the plaintiff prevails. If, however, the employer persuades the fact finder that its reasons were nondiscriminatory, the employer prevails.

503 N.W.2d at 229. The *Schweigert* opinion confirmed this effect by its holding:

Although it is apparent that the trial court analyzed the case under the *McDonnell Douglas/Burdine* formula, which we have concluded is, in part, inconsistent with State law, we believe that no error resulted because the trial court clearly found that Provident Life established by a preponderance of the evidence that its decision to terminate Martin's employment was based upon legitimate, economic reasons not laced with discriminatory motives.

*Id.* The jury should be instructed that, if it finds the employer's explanation incredible, it should conclude that the employer illegally discriminated on the basis of age.

While *Schweigert* was gender discrimination, and this case is age discrimination, North Dakota has a unitary Human Rights Act for all discriminatory employment practices. On the other hand, the federal enactments on discrimination are fragmented, separate, and often differently construed for different kinds of discrimination. Thus, distinct federal precedents on age discrimination are of minimal value in interpreting North Dakota's unitary Human Rights Act. For that principal reason, I disagree with that part of the majority opinion that shifts the effect of the North Dakota presumption in an age discrimination case towards the federal effects in its separate category of age discrimination cases.

Nor do I agree that on remand the trial court should instruct on the at-will doctrine embodied in NDCC 34-03-01, part of a separate chapter. In a case under the North Dakota Human Rights Act, it simply is not true that an employee "can be let go for any reason or no reason," as NDHA advanced in its requested instruction. The at-will doctrine is unrelated to employment discrimination. The Human Rights Act prohibits employment decisions "because of . . . age" and much more.

> It is a discriminatory practice for an employer . . . to discharge an employee . . . because of race, color, religion, sex, national origin, age, physical or mental handicap, status with respect to marriage or public assistance, or participation in lawful activity off the employer's premises during non-working hours which is not in direct conflict with the essential business-related interests of the employer.

NDCC 14-02.4-03. An employee can be discharged only for a non-discriminatory reason. In this case, the questions of fact on remand involve whether NDHA discriminated against the claimants by terminating them because of age. NDHA must justify its action with a credible non-discriminatory reason, not just "any reason" or "no reason."

Because I do not join in all of the majority opinion in reversing and remanding, I concur in the result only.

NEUMANN, Justice, concurring.

I concur in the remand for a new trial. I am, however, very confused as to how that trial is to be conducted. There appears to me to be diametric opposition between the majority's opinion here and what a majority of this Court said in *Schweigert*, in the event the employer should fail to overcome the presumption that is raised by a prima facie case. *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225 (N.D.1993).

Footnote 2 in *Schweigert* tells us that a prima facie case is established by an employee's showing that (1) the employee was a member of a protected class; (2) the employee was satisfactorily performing the duties of the job; (3) the employee was discharged; and (4) others not in the protected class were treated more favorably. 503 N.W.2d at 227 n. 2. The prima facie case does not require any evidence of the ultimate fact of intentional discrimination. It does, however, shift the burden to the employer to prove that the employer did *not* intentionally discriminate. *Id.* What happens if the employer fails to meet that burden of proof? Does the employee win, without having directly proved intentional discrimination? That is what some parts of *Schweigert* seem to say, and that certainly is the interpretation of *Schweigert* which Justice Meschke urges in his separate concurrence in this case. Can the employer's failure to prove a legitimate, non-discriminatory reason for the discharge somehow become the missing evidence of intentional discrimination?

Or is it possible, as the majority opinion in this case suggests, for an employee to lose the lawsuit even though the employee has successfully proved a prima facie case and the employer has failed to rebut it? That certainly is the state of federal law at this point, but it makes sense only because of the very different effect of a presumption under Federal Rule 301. Under our version of Rule 301, with its dramatically different ef-

fect of a presumption, *id.* at 228–29, such an outcome makes no sense at all.

It appears the majority implicitly overrules a portion of *Schweigert.* If that is the case, we would give better guidance to the trial court if it were done explicitly. Our trial colleagues should not be left in a bewilder-ment of ambiguity. They, after all, are the ones who actually must try this case.