Gail SWABACK, individually and on behalf of the estate of David Swaback, deceased, Plaintiff–Appellant,

v.

AMERICAN INFORMATION TECHNOLOGIES CORPORATION, Illinois Bell Company, Ameritech Employees Benefit Committee, et al., Defendants–Appellees.

No. 96–1183.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1996.

Decided Dec. 20, 1996.

536

H. Candace Gorman, argued, Chicago, IL, for Gail Swaback.

Arthur B. Smith, Jr., argued, Murphy, Smith & Polk, Chicago, IL, Paul K. Whitsitt, Ameritech Services, Inc., Hoffman Estates, IL, for American Information Technologies Corp., Illinois Bell Telephone Co., Ameritech Employees Benefit Committee, Illinois Bell Benefit Committee.

Suzanne Windle, Karen L. Handorf, Robin Springberg Parry, argued, Dept. of Labor, Office of the Solicitor, Washington, DC, for Amicus Curiae Robert B. Reich.

Steven S. Zaleznick, Mary E. Signorille, Stephen M. Koslow, American Ass'n of Re-

tired Persons, Washington, DC, for Amicus Curiae American Ass'n of Retired Persons.

Jeffrey Lewis, Sigman, Lewis & Feinberg, Oakland, CA, for Amicus Curiae Nat. Employment Lawyers Ass'n.

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

From June 20, 1960, until his death from pancreatic cancer on June 14, 1991, David Swaback was an employee of Illinois Bell and was a participant in the Ameritech Management Pension Plan ("AMPP"). The AMPP provides a procedure by which a participant who has a vested pension with a present value of greater than $3,500 can elect a lump sum payout of that pension upon retirement. The plan requires participants to elect this option, in writing, at least thirty days in advance of retiring. The district court found that Mr. Swaback had failed to elect the lump sum payment because he had not given Illinois Bell the requisite notice. Gail Swaback, Mr. Swaback's widow and administratrix for his estate, appeals this decision. For the reasons that follow, we reverse, in part, the judgment of the district court and remand the case with direction to enter judgment for Mrs. Swaback on her section 502(a)(1)(b) ERISA claim.

## I

### BACKGROUND

#### A. *Facts*

David Swaback, deceased, had been employed by Illinois Bell ("Bell"), a subsidiary of Ameritech Information Technologies Corporation ("Ameritech"), as a management level employee from June 20, 1960 until his death on June 14, 1991. Bell was a participating company in the AMPP,[1] which is a "pension plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Under the plan, participating Bell employees are able to file claims for benefits under the AMPP with the Illinois Bell Benefits Committee ("Bell Committee"), and if unsatisfied with the result, may appeal to the Ameritech Benefits Committee ("Ameritech Committee"). The AMPP provides the committees with significant discretion in administering the plan. Both committees are plan fiduciaries.

Mr. Swaback was diagnosed with pancreatic cancer in June 1990. By September, he was no longer able to work for the company and began receiving benefits under Ameritech's Sickness and Accident Disability Benefits Plan ("SADP").[2] At the time of his disability, Mr. Swaback had met the eligibility requirements for a service pension; he had worked for the company for greater than thirty years, which negated any minimum age requirement for the service pension. In April 1991, while still receiving SADP benefits, Mr. Swaback telephoned Wylie Etscheid, his supervisor, to inquire into his retirement options. Etscheid spoke with James Wilkes, a Bell vice-president, about Mr. Swaback's retirement. Etscheid relayed to Mr. Swaback that he qualified for the monthly service pension, but that, under the AMPP, he would

---

**1.** The relevant provision of the AMPP at the heart of this lawsuit is section 4, para. 12(b), Elective Lump Sum Distribution:

If the present value of the monthly service pension ... payable under paragraph 1 of this section 4 (excluding any service pension either converted from a disability pension or payable to someone who could elect to receive a disability pension) exceeds $3,500 as of the date on which the employee retires, resigns or is dismissed, the employee may elect to receive a lump sum distribution of such present value, subject to ..., the following:

(i) Any election under this Paragraph 12(b) by an employee who is entitled to a service pension must be in writing filed with the Committee no later than 30 days prior to the date

as of which he voluntarily retires.... Such 30 day period shall, in the case of a retirement by an active employee for reasons other than health, be reduced by the number of the employee's current year's vacation and personal days as of his date of retirement.

R.17 at 109–10. Paragraph 1 of section 4 establishes the eligibility requirements for service pensions under the plan: pertinent here, 30 years of service, regardless of age.

**2.** Under the SADP, Mr. Swaback qualified to receive payments due to his inability to work by reason of sickness. Because he had worked for the company for at least 25 years, he could receive "full pay" benefits for up to 52 weeks.

have to return to work (which required approval from a Bell physician) to elect the lump sum equivalent of his service pension.

In late April or early May, Annette Goetz, the Bell staff manager for benefits, called Mr. Swaback to discuss his retirement options with him. During this conversation, Mr. Swaback said that he wanted to retire and was interested in the lump sum option. He also indicated that he would prefer that Ms. Goetz bring the pension papers to him for his signature rather than his traveling into Bell's offices. She agreed, and they arranged an appointment for May 8, 1991, at which she would bring the necessary paperwork to his home. The day before the meeting was to take place, however, Ms. Goetz received a note from her supervisor, Don Hattendorf, explaining that the appointment would likely be canceled. It was.[3] Hattendorf, at approximately the same time, phoned Mr. Swaback to make sure he understood that, in order to elect the lump sum retirement, he would need to be medically approved to return to work and to elect this option in writing at least thirty days prior to his retirement date. Hattendorf, after their conversation, made an appointment for Mr. Swaback to see a Bell physician, but the medical exam did not occur.[4] In June 1991, Mr. Swaback telephoned Ms. Goetz to set up another meeting to go over his retirement benefits. By June 13, the day of the scheduled appointment, Mr. Swaback was hospitalized, but Ms. Goetz met with Mrs. Swaback. Goetz repeated to Mrs. Swaback that, in order to qualify for the lump sum pension, her husband would have to be medically fit for work and would have to return to work. Mrs. Swaback indicated that she was aware of these requirements. The following day, June 14, Mr. Swaback died. There is no evidence in the record indicating that Bell ever provided him with the necessary forms to elect a lump sum payout before his death.

The following month, Mrs. Swaback filed a claim with the Bell Committee for Mr. Swa-

back's service pension in the form of a lump sum. On August 20, 1991, the Bell Committee denied Mrs. Swaback's claim because her husband had been on SADP status and had not been medically approved to return to work. According to the Bell Committee, Mr. Swaback, as someone receiving SADP benefits, was in the class of people excluded by section 4, para. 12(b) of the AMPP from choosing the lump sum pension option. Mrs. Swaback appealed this determination to the Ameritech Committee, which similarly denied her claim for the lump sum. The Ameritech Committee reiterated that to choose the lump sum, Mr. Swaback would have needed to return to work, requiring approval from Bell physicians, and to make the lump sum election thirty days prior to his retirement. Mrs. Swaback then filed suit in district court, challenging this interpretation of the AMPP. Her complaint alleged violations of various provisions of ERISA, federal common law violations, and a pendent state law claim.

### B. District Court Proceedings

#### 1. Magistrate Judge's Report and Recommendation

On March 24, 1995, the parties filed cross-motions for summary judgment. On June 15, 1995, the magistrate judge issued his Report and Recommendation on these motions. In reviewing the Ameritech and Bell Committees' decisions, he found the AMPP proviso dealing with the lump sum option to be ambiguous. The magistrate judge also determined that the committees reasonably looked to the Summary Plan Description ("SPD")[5] and, applying an arbitrary and capricious standard, recommended that Mrs. Swaback's motion for partial summary judgment be denied and that Ameritech's motion for summary judgment be granted. The magistrate judge concluded that the committees had provided a full and fair review and had come to a reasonable decision by denying the claim for a lump sum payment. It was

---

3. The record does not make clear whether Mr. Swaback or Bell canceled the May 8 meeting.

4. There is no dispute that, at the time of this appointment, Mr. Swaback was not medically capable of returning to work full time.

5. The SPD provides: "Employees who retire or terminate immediately ... after the termination of disability benefits may not elect a lump sum." R.17 at 210.

neither arbitrary nor capricious, in the opinion of the magistrate judge, to decide that the lump sum was not available to Mr. Swaback unless he had been medically certified by Ameritech and had returned to work. The magistrate judge's recommendation that the Ameritech Committee's decision be upheld relied upon his finding that an individual, while receiving SADP benefits, is not an employee for purposes of para. 12(b) of the plan. With respect to the federal common law claims and the pendent state law claim, the magistrate judge found that no genuine issue of material fact existed and recommended that summary judgment be granted on these claims for Ameritech. Mrs. Swaback took exception to the magistrate judge's report.

### 2. District Court Order

The district court disagreed with much of the magistrate judge's analysis. It agreed with Mrs. Swaback that Ameritech should not have relied upon the SPD. The court noted that, in instances in which the SPD and AMPP differ, the SPD explicitly provides that the AMPP is controlling. The district court, in reading the AMPP, viewed the plan as clear and unambiguous. The AMPP, according to the district court, sets out five prerequisites to an employee's election of a lump sum in lieu of a service pension: (1) The present value of the pension is greater than $3,500; (2) the service pension is not one converted from a disability pension; (3) the pension is not payable to someone who could elect a disability pension; (4) the election of the lump sum payment must be in writing; and (5) the written election must be made more than thirty days prior to the retirement date. In the district court's view, the AMPP simply does not contain any requirements that an employee be medically approved before electing the lump sum or that he be on the "active payroll." Further, the district court determined that the magistrate judge was mistaken in concluding that Mr. Swaback was not an employee for purposes of the lump sum proviso. Because he received regular and stated pay-

ments—compensation—from Ameritech due to his having worked for Bell, Mr. Swaback was a Bell employee. However, the district court held that Mrs. Swaback was not entitled to the lump sum payment because her late husband had not elected the lump sum payment in writing at least thirty days before his retirement; in fact, he had never made the election before his death. Mrs. Swaback appeals.

## II

## DISCUSSION

We focus primarily on Mrs. Swaback's section 502(a)(1)(B) ERISA claim.[6] The parties' primary dispute is one of interpretation of the AMPP. Mrs. Swaback contends that the plain language of section 4, paras. 1 and 12(b) makes clear that the Ameritech and Bell Committees' reasons for denying her husband's request for a lump sum retirement payment—that he was not on the active payroll and that he had not been medically approved to return to work—were not part of the AMPP. She further submits that the thirty-day written notice requirement should be excused, as its non-occurrence was occasioned by Ameritech's conduct and misrepresentation. Mrs. Swaback, therefore, asks us to reverse the district court's grant of summary judgment for Ameritech and to award her the lump sum disbursal to which she claims her husband was entitled. On the other hand, Ameritech asserts that the AMPP is ambiguous and that the decisions by the committees are entitled to deference. Ameritech insists that Mr. Swaback did not meet the requirements for a lump sum distribution because he was not on the active payroll, and the SPD clearly states, in writing, that employees may not elect lump sum pensions directly from SADP status. In addition, Ameritech maintains, because no written election for a lump sum was ever made, no lump sum was due to Mr. Swaback.

### A. Standard of Review

■ We review a district court's decision to grant summary judgment de novo. *Buck-*

---

**6.** Section 502(a)(1)(B) of ERISA provides in pertinent part: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan...." 29 U.S.C. § 1132(a)(1)(B).

ley Dement, Inc. v. Travelers Plan Adm'rs, Inc., 39 F.3d 784, 787 (7th Cir.1994) (citing Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir.1994)). We review the record and controlling law under the same standard as the district court. Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 990 (7th Cir.1993) (citing Soo Line R.R. v. Overton, 992 F.2d 640, 643 (7th Cir.1993)). "Summary judgment is proper only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Cox v. Acme Health Servs., 55 F.3d 1304, 1308 (7th Cir.1995) (quoting Fed. R.Civ.P. 56(c) and citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). A fact is material only if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). To determine whether summary judgment is appropriate, we view the evidence and draw all reasonable inferences therefrom in a light favorable to the non-moving party. Id.

In reviewing a denial of benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), we look to the principles laid down in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There, the Supreme Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. at 956–57. Turning to the case at hand, we agree with the district court that the AMPP gives the committees this discretionary authority[7] and that their actions should be judged under an arbitrary and capricious standard.[8]

### B. Section 502(a)(1)(B) Claim

#### 1. District Court's Grant of Summary Judgment

■ ERISA plans must be in writing. 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan is to be established and maintained pursuant to a written instrument."). ERISA further provides that a fiduciary is to discharge his duties with respect to the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Although we review the committees' actions in a deferential light, we shall not rubber stamp their decisions. See Donato v. Metro. Life Ins. Co., 19 F.3d 375, 380 (7th Cir.1994). We previously have concluded that, if fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious.[9]

■ In addition, we note that, because the case was brought pursuant to ERISA, federal common law principles of contract interpretation govern.[10] These principles require

---

7. The AMPP, section 3, para. 4, provides: "The Committee shall determine conclusively for all parties all questions arising in the administration of the [AMPP]...." R.17 at 61.

8. Relying on cases in which we found the plans under review to confer upon administrators sufficient discretionary authority to warrant deferential review, the magistrate judge concluded that the AMPP grants the Ameritech administrators significant discretion and that a deferential standard should apply. The district court accepted this finding because Mrs. Swaback did not object specifically to it.

9. See Filipowicz v. American Stores Benefit Plans Comm., 56 F.3d 807, 814 (7th Cir.1995) (concluding that ignoring the plain language of the plan and denying benefits was arbitrary and capricious); see also Egert v. Connecticut Gen. Life Ins. Co., 900 F.2d 1032, 1037–38 (7th Cir.1990) (holding that, when guidelines contradict the plan's requirements, denial of benefits pursuant to guidelines was arbitrary and capricious); Kochendorfer v. Rockdale Sash & Trim Co., 653 F.Supp. 612, 617 (N.D.Ill.1987) ("[A] decision of the trustees which is contrary to the plain words of the controlling document is arbitrary and capricious."); cf. Lickteig v. Business Men's Assurance Co., 61 F.3d 579, 585 (8th Cir.1995) (noting the similar approaches—significant weight given to plain meaning of the plan in determining arbitrariness and capriciousness of a contrary interpretation-taken by the 4th, 5th and 6th Circuits and citing cases).

10. GCIU Employer Retirement Fund v. Chicago Tribune Co., 66 F.3d 862, 864–65 (7th Cir.1995) (citing Phillips v. Lincoln Nat'l Life Ins. Co., 978

us to interpret terms of ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience.[11] "Extrinsic evidence should not be used where the contract is unambiguous." *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 865 (7th Cir.1995) (citing *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir.), *cert. denied*, 510 U.S. 909, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993)).

■ With these principles firmly in mind, we turn to the Ameritech and Bell Committees' interpretation of the AMPP. After reviewing the AMPP, we conclude that the district court was correct in concluding that the AMPP did not contain Ameritech's phantom requirements—that Mr. Swaback had to return to work and had to be medically "OK'd" to return to work. Section 4 of the AMPP deals with employee pensions. Paragraph 1(a) sets out the eligibility requirements for employee service pensions: "Subject to the provisions set forth elsewhere in this plan, ... all employees regardless of age whose terms of employment have been at least thirty years shall, if they leave the service of [Bell] for any reason ..., be retired from active service and, upon such retirement, shall be granted service pensions." R. 17 at 65. Paragraph 12(b) allows those employees whose service pension's present value exceeds $3,500 to elect a lump sum distribution for their service pensions in lieu of the monthly payments. That proviso states:

> If the present value of the monthly service pension ... payable under paragraph 1 of this section 4 (excluding any service

pension either converted from a disability pension or payable to someone who could elect to receive a disability pension) exceeds $3,500 as of the date on which the employee retires, ... the employee may elect to receive a lump sum distribution of such present value, subject to ... the following:

> (i) Any election under this Paragraph 12(b) by an employee who is entitled to a service pension must be in writing filed with the Committee no later than 30 days prior to the date as of which he voluntarily retires....

*Id.* at 109–10. Our reading of this language is in accord with that of the district court. We agree that the AMPP's only service pension eligibility requirements are the term-of-service and age requirements and that the AMPP imposes only five conditions on the election of the lump sum option: (1) The present value of the pension must be greater than $3,500; (2) the service pension must not be one converted from a disability pension; (3) the pension must not be payable to someone who could elect a disability pension; (4) the election of the lump sum payment must have been in writing; and (5) the written election must have been made more than thirty days prior to the retirement date. We, like the district court, find these clear and unambiguous requirements dictated by the language of the AMPP.[12] Nowhere in these provisions is there any mention of a requirement that an employee must be on the active payroll or be medically fit in order to elect a lump sum distribution.[13] Because

F.2d 302, 307 (7th Cir.1992) (federal common law rules of contract apply in ERISA actions)); *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir.1993), *overruled on other grounds by Ahng v. Allsteel, Inc.*, 96 F.3d 1033 (7th Cir.1996) (holding that retirement benefits are "accrued benefits" under ERISA).

11. *Meredith*, 11 F.3d at 1354 (citing *Hammond v. Fidelity & Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992)).

12. Ameritech contends that this language is ambiguous as to whether an employee must retire from the active payroll to elect the lump sum. Given this ambiguity, Ameritech maintains, it was not arbitrary and capricious for the committees to look at extrinsic evidence, such as the SPD (which explicitly states that an employee in

Mr. Swaback's situation cannot elect the lump sum), and to determine that Mr. Swaback, although meeting the requirements for a monthly service pension, did not meet the requirements to receive the present value of that service pension. Because we find that the AMPP is unambiguous in not imposing the additional requirements on the lump sum option, we cannot agree that Ameritech could have gone outside the plan to the SPD for interpretive guidance. *See GCIU*, 66 F.3d at 865 (citing *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir.1993)).

13. Ameritech's reading of para. 12(b) is strained. Ameritech asks us to accept that para. 12(b)'s brief parenthetical is a shorthand reference to a group of people excluded from being able to elect the lump sum. Ameritech reads the parentheti-

Ameritech deviated from the clear language of the written plan and imposed requirements that were not part of the AMPP and repeatedly informed Mr. Swaback that he could not elect the lump sum equivalent of his service pension unless he met those additional, unenumerated requirements, we find that the committees acted arbitrarily and capriciously in interpreting the AMPP.[14]

■ Unlike the legal issue of the AMPP's interpretation, the material facts are not in dispute: Mr. Swaback was eligible for a service pension; it had a present value greater than $3,500; and it was not a service pension converted from a disability pension. The district court also noted that the parties agreed that Mr. Swaback, at the time he wanted to retire, could not elect a disability pension.[15] With respect to these interpretive and factual issues, we have no disagreement with the district court's analysis. However, the district court further determined that, although the AMPP was free of Ameritech's phantom requirements, Mr. Swaback was not entitled to the lump sum because he had failed to fill out the requisite forms and to elect this option at least thirty days prior to

his retirement. With this final point we cannot agree.

■ We previously held that, if employees have been deterred, by an employer's misrepresentation, from electing retirement benefits to which they were entitled, they can maintain an ERISA action for those benefits. To prevail in such an action, we said, they must "present the court with a factual record detailing their attempt to retire and the company's action in misinforming them." *Meredith v. Allsteel, Inc.,* 11 F.3d 1354, 1358 (7th Cir.1993). This is consistent with our reliance on federal common law principles in interpreting ERISA plans. It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract.[16] Here, it is the repeated misinformation that Ameritech provided Mr. Swaback, orally and in writing, that prevented the occurrence of the condition precedent—Mr. Swaback's written election of the lump sum at least thirty days before his retirement.[17] Ameri-

cal phrase not only to refer to a group of excluded people identified by the type of pension they receive—those who have a service pension converted from a disability pension or those who could elect to receive a disability pension—but also to refer to a group of people who do not fall into either of these pension categories—those who receive SADP benefits. We do not conclude that the words in this parenthetical expression can carry the weight Ameritech asks them to carry.

14. *See Filipowicz,* 56 F.3d 807; *Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir.1981) ("Where the Trustees impose a standard not required by the pension plan itself, ... such action would result in an unwarranted and arbitrary construction of the plan."); *see also Cousin v. New Orleans S.S. Ass'n,* 16 E.B.C. 1052, 1055 (E.D.La. 1992) ("[T]he Committee abused its discretion, *per se,* by denying benefits based on a non-existent rule.").

15. Employees are entitled to a disability pension only after they have exhausted all 52 weeks of SADP benefits. Mr. Swaback had not exhausted these benefits and therefore, at the time of his death, was not someone who could have elected a disability pension.

16. *See* Restatement (Second) of Contracts § 225, cmt. b (1981) ("The non-occurrence of a duty ... may be excused by prevention or hindrance of its

occurrence through a breach of the duty of good faith and fair dealing...."); Arthur L. Corbin, Corbin on Contracts § 767 (1960) ("One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong....").

17. We note the congruity of this analysis with our ERISA estoppel jurisprudence. We held in *Thomason v. Aetna Life Ins. Co.,* that the doctrine of estoppel has not been preempted by ERISA. *See* 9 F.3d 645, 648–49 (7th Cir.1993). "[E]stoppel 'arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation.'" *Id.* at 648 (quoting *Black v. TIC Inv. Corp.,* 900 F.2d 112, 115 (7th Cir.1990)). Although we have not yet resolved whether estoppel principles apply only to unfunded plans or to both funded and unfunded plans, *see Krawczyk v. Harnischfeger Corp.,* 41 F.3d 276 (7th Cir. 1994), the concerns raised by Krawczyk are not present in this case because providing Mrs. Swaback the benefits to which her husband was entitled would not impact the actuarial soundness of the plan. *Cf. Thomason,* 9 F.3d at 649–50 ("[E]quitable estoppel principles are applicable, under federal common law, to certain ERISA claims, where the actuarial soundness of the plans will not be threatened by such applica-

tech should not be able to benefit from its inducement of the non-occurrence of the condition.[18]

Turning to the facts here, Mr. Swaback made clear to Ameritech that he wanted to retire and that he was interested in selecting the lump sum payment rather than his monthly service pension. Annette Goetz testified in her deposition that Mr. Swaback told her that he wanted to retire and to take the lump sum, but she explained to him that he would be unable to do so unless he would come back to work for at least thirty days.[19] In one of Mr. Swaback's hand-written notes, submitted to the court by Ameritech, Mr. Swaback explicitly indicated his desire to elect the lump sum option.[20] Mr. Swaback's supervisor, Mr. Etscheid, testified that he telephoned Mr. Swaback to make sure he understood that, to retire with a lump sum, he would need to be "OK'd" by the company doctor and to return to work. Finally, Mr. Hattendorf, Ms. Goetz's supervisor, testified that he had heard Ms. Goetz had an appointment with Mr. Swaback to go over his retirement options. Mr. Hattendorf therefore called Mr. Swaback to make sure he understood that he could not select the lump sum payment unless he were medically fit to return to work and unless he did, in fact, return to work. He further testified that, as a consequence of their conversation, he set up a medical appointment with company doctors for Mr. Swaback. These facts make clear that Mr. Swaback had communicated to Ameritech his desire to retire with a lump sum, but that he did not make the election because Ameritech repeatedly informed him that he was ineligible for the lump sum unless he met further requirements.[21] But as stated earlier, these requirements were not part of the AMPP. Thus, it is clear that, but for Ameritech's repeated written and oral misrepresentations to Mr. Swaback, he would have signed the election form, thereby meeting all the requirements for the lump sum payment in lieu of a monthly service pension. Had the district court correctly applied these principles to Mrs. Swaback's claim, it could not have granted summary judgment for Ameritech; we therefore reverse this grant of summary judgment.

### 2. District Court's Denial of Partial Summary Judgment

Mrs. Swaback also appeals the district court's denial of her motion for partial summary judgment. Ordinarily, denials of summary judgment are not appealable because we are authorized to review only final judgments.[22] However, the district court's grant of summary judgment in favor of Ameritech is a final judgment, and the interlocutory denial of partial summary judgment to Mrs. Swaback merged into the district court's order and is therefore appealable.[23] The rea-

tion."). Ameritech is obligated to make payments into the AMPP sufficient to provide for the service pensions and other payments from the plan and to ensure its actuarial soundness. AMPP, section 4, para. 8.

18. Because Ameritech must use operating funds to ensure the actuarial soundness of the AMPP and to make up any shortfalls in the AMPP, *see* AMPP, section 4, para. 8, its refusal to pay the lump sum redounds to its benefit.

19. In Ms. Goetz's deposition, when responding to the question of whether Mr. Swaback had told her that "he wanted to retire and take a lump sum," she responded, "He did, yes, but he would have had to have been back on the active payroll for at least 30 days." R. 120, Tab 9 at 22.

20. In this note, Mr. Swaback manifests his intention to "retire" and to "care for [his] family w[ith the] lump sum [pension]." R. 127 at 398.

21. In addition to these individuals' oral communication of the additional requirements to Mr. Swaback, Ameritech, well before Mr. Swaback became ill, distributed to him a copy of the SPD, which explicitly informs employees that they cannot take the lump sum pension after receiving SADP benefits unless they first returned to work for thirty days.

22. 28 U.S.C. § 1291; *see Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995) ("The denial of summary judgment is not a final judgment; rather, it is an interlocutory order."); *R.R. Donnelley & Sons v. FTC*, 931 F.2d 430, 431 (7th Cir.1991) (noting that denial of a motion for summary judgment is not a final order).

23. *See UAW v. Randall Div. of Textron, Inc.*, 5 F.3d 224, 227 (7th Cir.1993); *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 353 n. 55 (7th Cir.1988).

son that appellate courts, when reversing a grant of summary judgment, typically do not direct the district court to enter summary judgment in favor of the appellant is because a genuine issue of material fact remains. *See Morgan Guar. Trust Co. v. Martin,* 466 F.2d 593, 600 (7th Cir.1972). But, in instances in which the facts and law establish that the appellant is entitled to judgment as a matter of law, we are free to direct the district court to enter judgment in appellant's favor.[24]

Because we believe that this case presents no genuine issue of material fact, and both parties have briefed and responded to the cross-motions for summary judgment,[25] and because we believe that substantial further proceedings in the district court would be an inefficient use of judicial resources, we reverse the district court's denial for partial summary judgment on Mrs. Swaback's section 502(a)(1)(B) claim and direct the district court to enter summary judgment on this claim in favor of Mrs. Swaback on her section 502(a)(1)(B) claim.[26]

## III

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse and remand in part this cause for proceedings not inconsistent with this opinion. Mrs. Swaback may recover her costs in this court.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

24. *See Glass v. Dachel,* 2 F.3d 733, 739 (7th Cir.1993) ("Where facts are not disputed, if a district court grants one party's motion for summary judgment and denies the other party's cross-motion, this court can reverse and award summary judgment to the losing party below."); *Morgan Guar. Trust,* 466 F.2d at 600 (holding that this court has power to direct the entry of summary judgment when it would be just under the circumstances); *see also, e.g., Helen L. v. DiDario,* 46 F.3d 325, 339 (3d Cir.) (noting that, when there is no genuine issue of material fact and appeal concerns only issues of law, court is free to order district court to enter summary judgment), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 366 (6th Cir.1993) (noting that, when both sides have had opportunity to present evidence and the disposition is clear, circuit court may direct the entry of summary judgment), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); *Nazay v. Miller,* 949 F.2d 1323, 1328 (3d Cir.1991) (when the facts are uncontroverted, circuit court is free to enter an order directing summary judgment in favor of appellant). *See generally* 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for

review, and may remand the cause and *direct the entry of such appropriate judgment,* decree, or order ... as may be just under the circumstances.") (emphasis added).

25. There is no disagreement between the parties on the crucial factual elements for disposing of this case: Mr. Swaback qualified for a service pension; he expressed his desire to retire from Bell with a lump sum; Ameritech repeatedly, in writing and orally, told him that he could not do so unless he first returned to work; and Mr. Swaback, repeatedly confronted with these statements, did not meet the written election requirement. The case, throughout this litigation, has turned on the interpretation of the AMPP, a legal issue. We recognize that there is a genuine issue of fact over who canceled the May 8 meeting, but this fact is not material. Through its repeated misrepresentations, Ameritech prevented Mr. Swaback from electing the lump sum.

26. We need not reach her other federal claims that request duplicative relief. The judgment of the district court with respect to the pendent state claim is affirmed because Mrs. Swaback failed to make a specific objection to the Report and Recommendation of the magistrate judge. *See* Fed.R.Civ.P. 72(b).