134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Diane BAKER, Plaintiff-Appellant,
v.
Jesse BROWN, Secretary of the United States Department of
Veterans Affairs, Defendant-Appellee.
 No. 97-1634.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 12, 1997.
Decided Jan. 13, 1998.
 ORDER
 ANDERSEN
 
 1
 Diane Baker appeals the district court's grant of summary judgment in favor of the United States Department of Veterans Affairs ("VA") on her claim of racially discriminatory discharge under Title VII, 42 U.S.C. § 2000e-2(a)(1). Because Baker failed to establish that she met the VA's legitimate expectations, or that she was treated less favorably than similarly situated employees of a different race, the district court held that Baker failed to establish that her discharge from the VA was discriminatory. We affirm the judgment of the district court.
 
 
 2
 Baker, an African-American, began her employment at the VA's Hines Hospital as a medical clerk/typist in 1989, and in this position she received evaluations of "fully successful" or better. In May 1994, Baker applied for and received the position of program clerk in the Office of the Director of the Hospital. Linda DeRaad, the secretary to the director and the supervisor of the program clerks, hired Baker, along with Robin Olson (Caucasian) and Troy Palmer (African-American).
 
 
 3
 Within the first few months after selecting Baker, DeRaad began holding private meetings with Baker to discuss her alleged failure to comply with the written performance standards for program clerks. Program clerks are expected to comply with performance standards in three areas: typing/clerical, mail processing/distribution, and reception/consumer affairs. On January 31, 1995, DeRaad gave Baker a written warning that she needed to improve in each of these areas and that failure to improve could result in her termination. The warning referenced the particular standards violated, as well as examples of Baker's shortcomings. DeRaad placed Baker on a three-month performance improvement plan and met with her weekly to discuss her progress. According to Baker, DeRaad informed her during these meetings that her performance was satisfactory but nonetheless continued to give her poor written evaluations.
 
 
 4
 Throughout the performance improvement period, DeRaad continued to find numerous problems with Baker's work. DeRaad collected 115 documents with typing or grammatical errors. Under the performance standards, an employee is entitled to an acceptable review only if the employee makes a total of eight errors during the performance improvement period. DeRaad therefore rated Baker's performance as unacceptable.
 
 
 5
 Based on her unacceptable performance rating, the Hines Associate Director sent Baker a Notice of Proposed Removal. Baker submitted a written response, claiming that DeRaad treated her differently than white program clerks. Baker admitted making typographical and grammatical errors but stated that other clerks were permitted to correct similar errors and the errors were not counted against them. Baker believed that her alleged "errors" were not significant errors and were the result of her improper training for the position. Baker claimed that she was taking a class in an attempt to address her admitted "shortcomings" in the typing/clerical area. Baker also admitted making some mistakes with respect to the reception/consumer affairs element, but she believed that her work complied with the performance standards.
 
 
 6
 Director Cummings independently examined Baker's work, reviewing Baker's file containing the documents with alleged errors and Baker's response to the notice. Cummings determined to remove Baker because she failed to perform at an acceptable level with respect to the typing/clerical element and the reception consumer affairs element. During Baker's performance improvement period, she did not perform any work in the third element, mail processing/distribution, so this elementwas not considered.
 
 
 7
 Baker appealed her termination to the Merit Systems Protection Board ("MSPB"), alleging that the VA failed to prove that her performance was so deficient as to warrant her termination and that her termination was the result of racial discrimination. Based on a review only of Baker's performance under the typing clerical element, the MSPB determined that Baker failed to satisfactorily perform her position and affirmed her termination.
 
 
 8
 Baker then filed the present action in district court alleging discriminatory discharge and appealing the MSPB decision. Baker alleged that her work was judged under stricter performance standards than the work of similarly situated white program clerks. The VA moved for summary judgment, which the district court granted. The district court found that Baker's claim that her work was judged under stricter performance standards than that of white program clerks related to only the typing/clerical area, and that none of the claimed inequities explained Baker's admitted failure to perform the requisite tasks in the reception/consumer affairs area. The district court therefore held that Baker failed to establish that she met the VA's legitimate expectations with respect to the reception/consumer affairs standard. The district court also held that Baker failed to establish that a similarly situated employee received more favorable treatment, and that she failed to refute the VA's contention that she was terminated for inadequate performance. Although the district court also affirmed the MSPB's decision, Baker only appeals the district court's grant of summary judgment with respect to her discriminatory discharge claim.
 
 
 9
 We review the district court's grant of summary judgment de novo, construing the evidence and all reasonable inferences therefrom in the light most favorable to Baker. O'Connor v. DePaul University,123 F.3d 665, 669 (7th Cir.1997). "[E]mployment cases are governed by the same rules that govern other summary judgment cases, and they are equally amenable to summary disposition so long as there is no genuine dispute as to the material facts." Weeks v. Samsung Heavy Industries Co. Ltd., 126 F.3d 926, 933-34 (7th Cir.1997).
 
 
 10
 Baker attempts to establish her claim through indirect evidence as permitted by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In order to establish a prima facie case of discriminatory discharge through indirect evidence, Baker must show that: (1) she is a member of a protected class; (2) she was meeting the VA's legitimate expectations; (3) she was discharged; and (4) similarly situated employees of another race were treated more favorably. Cowan v. Glenbrook Security Services, Inc., 123 F.3d 438, 445 (7th Cir.1997). If Baker establishes a prima facie case of racial discrimination, then the burden of proof shifts to the VA to show a legitimate, non-discriminatory reason for the action it took against Baker. Id. If the VA meets this burden of production, the burden shifts back to Baker to show that the VA's proffered reason is pretextual. Id.
 
 
 11
 The parties do not dispute that Baker is a member of a protected class or that she was discharged. On appeal, Baker argues that she could not meet the VA's expectations because they were not legitimate, and that similarly situated employees of another race were treated more favorably. Baker also argues that a genuine issue of material fact exists whether the VA's proffered reason for her discharge, her unsatisfactory performance, was merely pretextual.
 
 
 12
 We examine the issue of whether Baker met the VA's legitimate expectations and whether the VA's proffered reason for Baker's discharge was pretextual together, "for if the conditions placed upon [Baker] by [the VA] are found to be illegitimate, it follows that [the VA's] expectations were likely pretextual, and vice-versa." Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1243 (7th Cir.1992). Baker argues on that she produced facts which, if believed, established that she was evaluated under different standards than similarly situated white program clerks, and that because of this double standard the VA's expectations of her were not legitimate. Baker does not argue that the documents the VA produced as evidence of her errors were false or that she was not responsible for the errors. Instead, Baker contends that her errors were the result of several factors, each of which was motivated by racial discrimination. Baker argues that she was not trained as well as the white program clerk, she was assigned to work for more employees, DeRaad was more critical of her work and more likely to find errors, and DeRaad created an hostile environment.
 
 
 13
 Baker's argument that her performance was evaluated under different standards than the performance of clerks of another race is similar to the plaintiffs' argument in Fisher in which the plaintiffs claimed that the defendant's performance evaluation program was a pretext for age discrimination. Fisher, 979 F.2d at 1244. The plaintiffs produced the names, ages, and performance levels of each worker during the period in which the program was applied. The plaintiffs' evidence showed that disciplinary measures were more likely to be applied against older workers than younger workers, the disciplinary measures applied against older workers were more severe, and older workers were more likely to be erroneously disciplined than younger workers. Id. at 1244-45. This court determined that the plaintiffs' evidence was sufficient to raise a genuine issue of material fact whether the program was merely pretextual. Id. at 1244.
 
 
 14
 The evidence Baker produced in support of her claim, however, is more similar to the evidence produced in Cowan than in Fisher. In Cowan, the plaintiff claimed that his termination for excessive tardiness actually was motivated by the discriminatory intent of one of his supervisors. Cowan, 123 F.3d at 440. Cowan maintained that white employees who were similarly tardy were not dismissed, but he failed to produce any evidence to support this allegation. Id. at 446. The court found that notwithstanding evidence of the supervisor's derogatory racial expressions, the evidence was insufficient to show that Cowan was performing his job satisfactorily, and he failed to establish a prima facie case of discriminatory discharge under McDonnell Douglas. Id. at 443-45.
 
 
 15
 Like Cowan, Baker failed to present sufficient evidence in support of her theory that the VA's expectations were not legitimate. In response to the motion for summary judgment, Baker submitted an affidavit setting forth the following facts to evince the allegedly different performance standards under which she was judged. Olson received more training than Baker, DeRaad assigned Baker to work for more people than Olson, Baker was required to leave her work station more often than Olson, Baker's typing errors always were shown to DeRaad, while Olson's errors merely were returned to Olson for correction, Olson's work was reassigned if she was absent from work, whereas Baker had to complete her work when she returned. DeRaad spoke to Baker more harshly than Olson and DeRaad had lunch with Olson and not Baker. Baker provided no evidence in support of these assertions, nor is there any support in the record Baker cannot defeat a motion for summary judgment through conclusory allegations in her affidavit that are mere "[s]elfserving assertions without factual support in the record." Weeks, 126 F.3d at 934 (quoting Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir.1994)).
 
 
 16
 Baker also submitted the affidavits of two African-American former program clerks who claimed that DeRaad spoke to them more harshly, was more critical of their errors, and had different expectations of them than white clerks. These affidavits also fail to establish a genuine issue whether Baker's performance was satisfactory. Although these affidavits may be considered to show DeRaad's disparate treatment of employees based on race, neither affidavit "speak[s] specifically to the reasons that the [VA] had articulated for placing [Baker] on probation and then removing her from her post; nor [do they] otherwise suggest that these reasons were a pretext for discrimination." Leffel v. Valley Financial Services, 113 F.3d 787, 791 (7th Cir.1997). Baker is "totally reliant on the McDonnell Douglas formula, [and she] is out of luck if [s]he can't show that [s]he was meeting [her] employer's legitimate expectations." Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir.1997).
 
 
 17
 Many of Baker's conclusory allegations are undermined or directly contradicted by other evidence in the record. For instance, the training log maintained by the senior program clerk who trained Baker, Olson, and Palmer shows that the senior clerk actually spent more time training Baker than the other clerks. Baker, moreover, compares her treatment with only that of Olson, the white program clerk who was hired at the same time. Although it is true that Olson received ratings of fully satisfactory or better, Palmer, the African-American program clerk, also received ratings of fully satisfactory or better.
 
 
 18
 No reasonable factfinder could conclude that the VA's reason for terminating Baker was mere pretext. Baker has not shown that the VA's explanation had no basis in fact, that the explanation was not the "real" reason, or that the reason stated was insufficient to warrant her termination. See Bahl v. Royal Indemnity Co., 115 F.3d 1283, 1291 (7th Cir.1997). Baker admitted in her response to the notice of proposed termination that she was unable to meet all the requirements of her position. The VA notified Baker of the areas in which she needed improvement and provided Baker with ample opportunity and guidance to improve her performance. Indeed, the record is clear that Baker made chronic errors, that she was warned she would be fired if her performance did not improve, and that, when it did not, she was fired. See Cowan, 123 F.3d at 445. "It is not our province to second-guess the business judgment of an employer where, as here, it acted on ample legitimate justification for [terminating] [Baker]." Id. at 445-46 (quoting Smith v. Firestone Tire & Rubber Co., 875 F.2d 1325, 1330 (7th Cir.1989)).
 
 
 19
 Moreover, Baker has not alleged that the actions of Cummings, who had formal authority over Baker's position, were racially discriminatory. The record demonstrates that Cummings conducted an independent examination of Baker's work and concluded that Baker failed to meet two out of the three critical elements of her position. Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir.1997). Cummings was aware of the allegations of disparate treatment that Baker raised in her response to the notice of proposed removal and reviewed her file in light of those accusations. Id.
 
 
 20
 Baker also makes a cursory argument that the district court improperly required her to establish that "a white program clerk who was supervised by DeRaad and failed to meet the reception/consumer affairs element of the job was retained by defendant." Although Baker's argument is not well-developed, she appears to argue that the district court's reasoning ignored DeRaad's disparate treatment of employees of different races. Because Baker has alleged that white program clerks were judged under different standards, Baker believes that she need only show that she was treated differently than a white program clerk who received a positive review.
 
 
 21
 This argument was rejected in Wallace v. SMC Pneumatics, Inc., 103 F.3d 542 (7th Cir.1997). If we were to accept Baker's argument, "all [Baker] would have to do to survive summary judgment would be to point to one [white] employee whom [the VA] had not fired." Wallace, 103 F.3d at 1398. Evidence of more favorable treatment of a similarly situated employee is essential to the McDonnell Douglas approach. Id.
 
 
 22
 Because Baker failed to establish a prima facie case of discrimination under McDonnell Douglas and failed to establish that the VA's reason for her termination was pretextual, we AFFIRM the judgment of the district court.